## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALYSSE N. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-507-C |
| | ) | |
| CHESAPEAKE ENERGY CORP., and | ) | |
| CHESAPEAKE OPERATING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Alysse N. Clark ("Plaintiff"), by and through the SONNE LAW FIRM, PLC, and for her complaint against Defendant Chesapeake Energy Corp., an Oklahoma corporation, and Chesapeake Operating, Inc., an Oklahoma corporation, (together referred to herein as "Defendant Chesapeake") alleges and states as follows.

## PARTIES

1.     Plaintiff is an individual who at all times relevant to this Petition resided in Oklahoma City, Oklahoma County, Oklahoma.

2.     Defendant Chesapeake Energy Corp. and Defendant Chesapeake Operating, Inc., are Oklahoma corporations.  Their registered agent for service of process is The Corporation Company, 1833 South Morgan Road, Oklahoma City, Oklahoma, 73128. Defendant Chesapeake Operating, Inc., is a wholly-owned subsidiary of Defendant Chesapeake Energy Corp.  Plaintiff was employed by both.  Therefore, Plaintiff refers to them collectively herein as "Defendant Chesapeake."

1

## JURISDICTION AND VENUE

3.      Plaintiff asserts claims under the Pregnancy Discrimination Act of 1978 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for discrimination, retaliation, and wrongful discharge; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, for disability discrimination, retaliation, and wrongful discharge; and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, for unlawful interference and wrongful discharge intended to deny FMLA rights and retaliation for the exercise of such rights.

4.      This Court has jurisdiction over Plaintiff's claims that arise under federal law pursuant to its federal question jurisdiction under 28 U.S.C. § 1331.  *See also* 42 U.S.C. § 2000e -5(f)(3) (Pregnancy Discrimination Act), 42 U.S.C. § 12117(a) (ADA), and 29 U.S.C. § 2617(a)(2) (FMLA).

5.      Venue is proper in the Western District of Oklahoma pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 as all acts and omissions of Defendants complained of occurred in Oklahoma County, Oklahoma or other adjacent counties in the Western District of Oklahoma.

## CONDITIONS PRECEDENT

6.      Pursuant to 42 U.S.C. § 2000e-5(e), Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 26, 2013, which was within one hundred eighty (180) days of Plaintiff's unlawful termination by Defendant Chesapeake on May 13, 2013.

7.     Plaintiff received a Notice of Right to Sue letter from the EEOC that was dated February 19, 2014, and, pursuant to 42 U.S.C. § 2000e-5(f)(1) brings this lawsuit within ninety (90) days from receipt of said Notice.

## GENERAL ALLEGATIONS

8.     In November 2011, Plaintiff was hired by Defendant Chesapeake as an Administrative Assistant for Events.

9.     Throughout the time of Plaintiff's employment with Defendant Chesapeake, Plaintiff's immediate supervisor was Defendant Lauren Paternostro, Defendant Chesapeake's Manager of Events.

10.    At all times during her employment with Defendant Chesapeake, Plaintiff was qualified for and did perform her job duties in an above satisfactory manner and further received excellent performance reviews.  Defendant Chesapeake's performance incentive policy for employees in Plaintiff's job category included the ability to be awarded (1) salary increases, (2) monetary bonuses, and (3) stock grants.  At Plaintiff's performance reviews in July 2012 and January 2013, Plaintiff was awarded all three incentives.

11.    At Plaintiff's January 2013 performance review, Plaintiff informed Paternostro and Erika Braver, Defendant Chesapeake's Events Supervisor, of Plaintiff's pregnancy.

12.    Around the same time, Plaintiff became aware that Paternostro was also pregnant and was due around the same time as Plaintiff.

13.    In late January 2013, an employee in Plaintiff's department complained to Defendant Chesapeake's human resources department about the management of Plaintiff's department.   During the investigation that ensued, Plaintiff and all of Plaintiff's co-workers were interviewed by human resources and were ordered to be candid regarding problems in Plaintiff's department.

14.    On or about February 28, 2013, Plaintiff had a one-on-one conversation with Paternostro regarding the human resources investigation.   Paternostro advised Plaintiff that she had been ordered by Martha Burger, Senior Vice President of Human Resources at Defendant Chesapeake, to fire all the employees in Plaintiff's department and start from scratch.   Paternostro confided in Plaintiff that she intended to retain the current employees and make things work.

15.    On or about May 2, 2013, Plaintiff had another one-on-one conversation with Paternostro regarding the issues with Plaintiff's department, Plaintiff's known difficulties/complications that Plaintiff was experiencing with her pregnancy, and current plans for future time off and leave both during the remainder of her pregnancy, and following the birth of her child.   During that conversation, Plaintiff advised Paternostro that she would be cancelling a previous paid time off request in order to save the hours for doctor's appointments and potential sick days stemming from Plaintiff's pregnancy and the difficulties/complications Plaintiff was experiencing.   Plaintiff and Paternostro also discussed Plaintiff's options under the policies of Defendant Chesapeake to choose between six weeks of maternity leave at 100% pay or two weeks of leave at 100% pay plus an additional six weeks of leave at 70% pay as well as leave under the FMLA.

4

Plaintiff stated that she had not yet decided which option she would choose.  Plaintiff and Paternostro also discussed Plaintiff's request for a reduced workload (28-32 hours per week for six weeks per the policies of Defendant Chesapeake) when Plaintiff returned to work after her maternity leave.  Plaintiff also stated that she did not feel that her pregnancy was supported by Defendant Chesapeake or Paternostro.  Plaintiff also discussed future plans for time off due to pregnancy related illness and complications that Plaintiff was experiencing.

16.    On May 9, 2013, Plaintiff e-mailed Paternostro and Erika Brewer at 6:00am to advise them that Plaintiff had been sick since 10:00 pm the night before with pregnancy-related issues/complications.  Plaintiff requested that she be allowed to use eight (8) hours of her earned paid time off.  Later that afternoon, Plaintiff was hospitalized for six hours to receive IV fluids and nausea medicine due to her health condition and the complications from her pregnancy.

17.    On May 10, 2013, <u>the day after her hospitalization due to complications/difficulties with her pregnancy</u> in which she missed work, Plaintiff was summoned to a meeting with Paternostro and Kelly Wilson, an Employment Relations Specialist with Defendant Chesapeake.  Plaintiff was issued a "Disciplinary Action" document.  The document raised "concerns" about the following:

> *Attention to detail with assigned tasks and team projects.*
>
> *Reliability and accountability; co-workers having to take over your workload responsibilities.*

*Since November 28, 2012, you have exhausted all but two hours of your sick time and only have 45 hours of PTO and birthday leave available until November 28, 2013.*

The document falsely stated that Plaintiff and Paternostro had met one-on-one four separate times to discuss these issues, including one date on which Plaintiff had been out sick and could not have met with Paternostro.

18.     Before the "Disciplinary Action" was issued, Plaintiff had never been made aware that there were any concerns or issues with her job performance.   In fact, Plaintiff had filled in for other members of her Department when they had been absent.

19.     During the May 10, 2013 meeting, Plaintiff engaged in protected activity under all applicable laws by complaining of the "Disciplinary Action" she received the day after being hospitalized for pregnancy related illness/complications.   The Disciplinary Action specifically disciplined the Plaintiff for her proper use of leave under Defendant Chesapeake's own policies and further for her feared use of leave under Defendants' policies and the FMLA due to her pregnancy related complications and health issues in violation of federal law.

20.     On May 13, 2013, Plaintiff was called into the human resources office along with Paternostro at 8:15 am.  Plaintiff was shown an image from Plaintiff's private Instagram account of a mailing address to Kazakhstan.   On this basis, Plaintiff was accused of violating Defendant Chesapeake's Acceptable Use Social Media Policy.   To date, Plaintiff is unsure of how Defendants accessed the picture or their grounds for accusing Plaintiff of violating the company policy.   Nonetheless, at 4:30 pm, Plaintiff

was called into Kelly Wilson's office along with Paternostro and was terminated from her employment with Defendant Chesapeake.

21.     Plaintiff's termination of employment for allegedly violating Defendant Chesapeake's Acceptable Use Social Media Policy was merely a pretext for terminating Plaintiff because of her pregnancy and use of leave under Defendants' policies and FMLA (both past use and planned future use). Defendant's termination of Plaintiff's employment, less than a week following Plaintiff's complaints regarding the Disciplinary Action and 11 days after Plaintiff had brought concerns and issues to light regarding her pregnancy related health conditions, need for leave, and plans for leave following the birth of her child.   Such termination of employment was a blatant violation of the Defendant Chesapeake's own policies and was simply retaliation for Plaintiff's complaints, requests for accommodation, health condition, and pregnancy.

22.     Plaintiff had already received written discipline for missing work due to her pregnancy and for not having saved up "enough" leave for the remainder of her pregnancy.   In addition, Paternostro had concerns about her due date coinciding with Plaintiff's due date.   Paternostro had already been ordered to fire all the employees in Plaintiff's department but was trying to preserve the status quo.   As such, Paternostro was concerned about what would happen when she and Plaintiff took maternity leave at the same time.   Thus, Paternostro, in concert with officials of Defendant Chesapeake, devised a pretext for getting rid of Plaintiff prior to Plaintiff's exercise of her maternity leave and other pregnancy-related benefits.

23.     Following Plaintiff's termination, Plaintiff applied for and was granted unemployment benefits.  The Oklahoma Employment Security Commission found:

> Information received indicates the claimant was discharged from Chesapeake Operating, Inc. [sic] for performance.  The claimant stated she performed her work to the best of her ability.  **The employer failed to show misconduct.**

(Emphasis added.)

24.     Following Plaintiff's unlawful termination, Plaintiff endured extreme stress, humiliation, embarrassment, and fear stemming from losing her job shortly before bringing a child into the world.  Plaintiff faced serious difficulties in finding new employment and was out of work for an extended period of time.

25.     At the time of Plaintiff's unlawful termination, Plaintiff had been employed by Defendant Chesapeake for over twelve (12) months and had worked over twelve hundred fifty (1250) hours during the twelve (12) months prior to her termination.  Thus, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

26.     During the time of Plaintiff's employment, Defendant Chesapeake was an "employer" as defined by 29 U.S.C. § 2611(4).  Defendant Chesapeake is engaged in the oil and gas industry and other commercial activity affecting interstate commerce and it employs over fifty (50) employees for each working day during over twenty (20) workweeks each calendar year.  Thus, Defendant Chesapeake was required to comply with all statutory and regulatory requirements of the FMLA for its eligible employees, including Plaintiff.

27.     At the time of Plaintiff's unlawful termination by Defendant Chesapeake, Plaintiff had not utilized more than twelve (12) weeks of FMLA leave during the prior twelve (12) months.

**COUNT I – VIOLATIONS OF THE
PREGNANCY DISCRIMINATION ACT**

28.     Plaintiff restates and incorporates by reference all of the allegations set forth above.

29.     The actions of Defendant Chesapeake with respect to Plaintiff's employment were in direct contravention of the Pregnancy Discrimination Act of 1978 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  Specifically, Defendant Chesapeake discriminated against Plaintiff and further retaliated against her due to her pregnancy by disciplining Plaintiff for exercising her right to leave benefits because of pregnancy-related illness and by terminating Plaintiff because she was pregnant and in retaliation for Plaintiff's exercise of protected activity.

30.     Plaintiff satisfactorily performed all her job duties for Defendant Chesapeake during the time of her employment and received recognition for her excellent work.  Terminating Plaintiff for alleged misconduct was a mere pretext for terminating Plaintiff because of her pregnancy and anticipated absences and use of maternity leave.

31.     Defendant Chesapeake did not have a legitimate, good faith reason to terminate Plaintiff's employment and Plaintiff's engagement in a protected Title VII activity was a significant factor in the termination decision.

32.     As a direct and proximate result of Defendant Chesapeake's actions, Plaintiff has suffered actual and consequential damages including lost wages, benefits, and other damages and is entitled to recover back pay, front pay, compensatory and punitive damages, and attorney fees.

33.     Because the actions of the Defendant Chesapeake were intentional, willful, wanton, or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages under all applicable laws.

## COUNT II – VIOLATIONS OF THE
## AMERICANS WITH DISABILITIES ACT

34.     Plaintiff restates and incorporates by reference all of the allegations set forth above.

35.     The actions of Defendant Chesapeake with respect to Plaintiff's employment were in direct contravention of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*  Specifically, Defendant Chesapeake failed to make reasonable accommodations for Plaintiff's pregnancy-related physical limitations pursuant to 42 U.S.C. § 12112(b)(5), discriminated against Plaintiff based on her pregnancy, and unlawfully terminated Plaintiff because of her pregnancy and attempts to exercise her right to reasonable accommodations for her physical limitations.

36.     Under the ADA, leave for an employee due to a physical limitation may constitute a mandatory reasonable accommodation by an employer.  As the Tenth Circuit Court of Appeals has held:  "We have previously explained that limited leave for medical treatment may qualify as a reasonable accommodation under the ADA." *Smith v. Diffee*

*Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002).  The leave required by Plaintiff during her employment with Defendant Chesapeake was such a reasonable accommodation.  Indeed, at no time has Defendant Chesapeake articulated <u>any</u> undue hardship that it would have experienced due to Plaintiff's use of leave.  In the absence of such a showing of undue hardship, it was unlawful for Defendant Chesapeake to terminate Plaintiff for her use of leave due to her physical disabilities stemming from her pregnancy.

37.    As a direct and proximate result of Defendant Chesapeake's actions, Plaintiff has suffered actual and consequential damages including lost wages, benefits, and other damages and is entitled to recover back pay, front pay, compensatory and punitive damages, and attorney fees.

38.    Because the actions of the Defendant Chesapeake were intentional, willful, wanton, or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages under all applicable laws.

**COUNT III – VIOLATIONS OF THE
FAMILY AND MEDICAL LEAVE ACT**

39.    Plaintiff restates and incorporates by reference all of the allegations set forth above.

40.    Plaintiff was entitled to exercise her right to FMLA leave both during her pregnancy and after giving birth and was entitled to have her employment protected during the exercise of such leave, including the planned exercise of such leave.  In spite of this, Plaintiff received written discipline for taking leave due to her pregnancy and was

terminated in part for taking such leave and in an effort by Defendant Chesapeake to forestall Plaintiff's exercise of additional leave after Plaintiff gave birth.

41.     Defendant Chesapeake interfered with Plaintiff's rights under the FMLA by disciplining her for both past and planned exercises of her right to FMLA leave. Defendant Chesapeake further terminated Plaintiff in order to deny her the right to exercise her FMLA leave rights both before and after she gave birth.   In so doing, Defendant Chesapeake violated 29 U.S.C. § 2615(a)(1).

42.     Defendant Chesapeake terminated Plaintiff in retaliation for Plaintiff's complaint that Defendant Chesapeake did not support her pregnancy, including her exercise of her right to leave under the FMLA, and in retaliation for Plaintiff's use of said leave (both past and planned).   In so doing, Defendant Chesapeake violated 29 U.S.C. § 2615(a)(2).

43.     Said violations by Defendant Chesapeake were willful as defined by the FMLA.

44.     As a result of Defendant Chesapeake's interfering and retaliatory acts and deprivation of Plaintiff's FMLA rights, Plaintiff has suffered actual and consequential damages including lost wages, benefits, and other damages and is entitled to recover back pay, front pay, compensatory and punitive damages, liquidated damages, and attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A.    Actual and compensatory damages, including both back pay and front pay, to be proven at trial, but in excess of $75,000;

B.    For costs, including expert witness fees, and attorney fees;

C.    Punitive damages under all applicable laws; and

D.    For such other relief as this Court deems equitable and appropriate or allowed by law.

Respectfully submitted,


*s/Blake Sonne*
Blake Sonne, OBA# 20341
SONNE LAW FIRM, PLC
P.O. Box 667
Norman, OK  73070
(405) 664-2919
(405) 872-8897 (fax)
bsonne21@yahoo.com
**ATTORNEY FOR PLAINTIFF**


**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**